IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SEGARS PROPERTIES, LLC; RALPH SEGARS & ASSOCIATES, INC.; AND RALPH SEGARS**, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:13-CV-4895-L** |
| **US BANK NATIONAL ASSOCIATION; NEWTEK BUSINESS SERVICES, INC.; AURORA COMMERCIAL CORP.; AURORA BANK FSB; CHRISTOPHER W. SCHRAUFF; KYLE DAVIS; LAUREN MUNOZ; AND AMY WHITE,** | § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' Emergency Motion for Reconsideration of Order Denying Plaintiffs' Application for Preliminary Injunction and Alternative Motion for Leave to Amend to Consider Plaintiffs' Brief in Support of Their Motion for Preliminary Injunction and Appendix Therewith (Doc. 11), filed January 6, 2014, at 6:49 p.m. On the afternoon of January 3, 2014, Plaintiffs filed a "bare-bones" Emergency Motion for Preliminary Injunction (Doc. 7) in a last-minute attempt to halt a foreclosure scheduled to take place January 7, 2014, at 10 a.m. Three days later on January 6, 2014, after the court had already prepared its memorandum opinion and order (Doc. 10) denying Plaintiffs' emergency motion, Plaintiffs filed a 22-page brief and appendix in support of their emergency motion. Because the brief was not filed together with Plaintiffs' emergency motion in accordance with Local Civil Rule 7.1(d),[1] the court was unaware of the brief

**Memorandum Opinion and Order - Page 1**

and appendix until after its opinion issued. Given the late timing of the motion and brief, there is insufficient time for Defendants to file a response before the foreclosure that is scheduled for January 7, 2014, at 10 a.m. After reviewing Plaintiffs' brief and appendix, the court concludes that nothing in the additional submission warrants reversal of its earlier opinion denying Plaintiffs' request for a preliminary injunction. The court therefore **grants** Plaintiffs' Alternative Motion for Leave to Amend to Consider Plaintiffs' Brief in Support of Their Motion for Preliminary Injunction and Appendix Therewith but **denies** Plaintiffs' Emergency Motion for Reconsideration of Order Denying Plaintiffs' Application for Preliminary Injunction (Doc. 11).

Plaintiffs have asserted claims for breach of contract, fraud, conversion, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Plaintiffs' fraud claim fails to satisfy the particularity required by Federal Rule of Civil Procedure 9(b). In particular, Plaintiffs fail to allege the dates the alleged fraudulent statements were made and facts, which if proved, would demonstrate that they were induced by and reasonably relied on the alleged representations.

Further, assuming, as Plaintiffs contend, that their claims are governed by Texas law, Plaintiffs' breach of contract claim, based on alleged oral agreements, fails because it is based on an unenforceable unilateral contract and illusory promise that did not bind Defendants. In Texas, "[a] contract that does not require a party to furnish consideration, or oblige him to do anything, lacks mutuality, is unilateral, and is unenforceable." *Johnson v. Kruse*, 261 S.W.3d 895, 898 (Tex. App.—Dallas 2008, no pet.) Here, Plaintiffs allege that Defendants promised to apply the insurance

---

[1] Local Civil Rule 7.2(d) also requires that a brief in excess of 10 pages contain a table of contents and authorities. Plaintiffs' brief, although in excess of 10 pages, does not contain a table of contents and authorities. *Future failures by Plaintiffs to comply with applicable local civil rules will result in their submissions being stricken, or the court may take other action it deems appropriate.*

**Memorandum Opinion and Order - Page 2**

proceeds to their December 1, 2009 payment and to overlook subsequent untimely payments. In exchange, however, Plaintiffs offer nothing in return or, at most, offer only to make payments under the note and deed of trust that they were already obligated to make.

Moreover, Plaintiffs' written contract claim also fails. Plaintiffs contend that Defendants breached the deed of trust by failing to return $180,000 in insurance proceeds to them or apply the proceeds to their indebtedness within 180 days also fails because Plaintiffs admit that they defaulted under the note and deed of trust *before* the time Defendants (the lender) would have been required to return the insurance funds or apply them to Plaintiffs' indebtedness.

Specifically, Plaintiffs acknowledge that they failed to pay timely their December 2009 mortgage payment. A January 12, 2010 letter from Aurora Bank, FSB, reflects that the lender treated Plaintiffs' failure to pay timely the December 1, 2009 payment as a "default," accelerated the balance due under the note, and advised Plaintiffs that they would have to pay $52,610.80 by January 22, 2010, to cure the default.[2] The letter further advised that partial payments of a lesser amount than that demanded would not be accepted. Plaintiffs assert that they made their scheduled monthly payment in January 2010, but they do not state that they cured the default by January 22, 2010, by paying the $52,610.80 owed. This payment and subsequent similar payments were therefore rejected and returned to Plaintiffs. Plaintiffs' December 1, 2009 default and subsequent failure to cure materially affected the parties' respective rights and obligations under the note and deed of trust moving forward. After Plaintiffs defaulted, Defendants were under no obligation under the deed of trust to return the remaining insurance proceeds. *See* Pls.' App. 23 ("Lender shall, upon

---

[2] According to the January 12, 2010 letter, the actual total amount of indebtedness under the note was $1,892,823.60. Aurora Bank, FSB, however, was only demanding $52,610.80 to cure Plaintiffs' default and reinstatement of the note.

**Memorandum Opinion and Order - Page 3**

satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or *restoration if Grantor is not in default under this Deed of Trust.*").

Moreover, according to Plaintiffs' time line, the insurance proceeds were not forwarded to the lender until "the end of 2009" or approximately two years after the property sustained flood damage in January 2008. Pls.' Original Pet. 5. The 180 days for the lender to turn over the insurance proceeds therefore would not have expired until March 2010, *after* the time that Plaintiffs defaulted on December 1, 2009. Thus, contrary to Plaintiffs' contentions, Defendants would have had no duty prior to March 2010 to turn over the insurance proceeds to them.

Additionally, according to Plaintiffs' pleadings and the declaration of Bart A. Segars ("Segars") that was included in Plaintiffs' January 6, 2014 submission,[3] Defendants' first alleged misrepresentation pertained to the December 2009 mortgage payment. Assuming as Plaintiffs allege that Defendants did not follow through on an oral promise to apply the insurance proceeds towards their December 2009 payment, any reliance by Plaintiffs on subsequent representations by Defendants that it was "okay" to make late payments would have been unreasonable. Pls.' Original Pet. 7. Segars also acknowledges that the company was experiencing financial difficulty as of December 2009 and would not have had "difficulty" making the December 2009 payment despite Defendants' alleged misrepresentation that the insurance proceeds would be applied towards the payment. *Id.* Plaintiffs therefore could not have been induced by or reasonably relied on this or Defendants' other subsequent misrepresentations or oral agreements regarding late payments.

---

[3] An affidavit by Segars, dated December 2, 2013, was also attached to Plaintiffs' Original Petition ("Petition"), and all of the statements from that affidavit were incorporated into the Petition. Segars' January 5, 2014 declaration is quite similar to his former affidavit but includes some additional information regarding the alleged oral promises by Defendants.

**Memorandum Opinion and Order - Page 4**

Plaintiffs' DTPA claim fails as a matter of law because they do not qualify as consumers and therefore do not have standing under the DTPA. Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.—San Antonio 2002, pet. denied). A person who seeks only to borrow money is not a consumer under the DTPA because lending of money, without more, does not involve a good or a service. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984). Likewise, the servicing of an existing loan and the request to modify an existing loan do not involve a good or service. *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451, 455 (E.D. Tex. 2011) (concluding that when a plaintiff seeks a modification of an existing loan, such action is "analogous to refinancing services" and does not qualify the plaintiff as a consumer under the DTPA); *Hansberger v. EMC Mortg. Corp.*, No. 04-08-00438-CV, 2009 WL 2264996 (Tex. App.— San Antonio July 29, 2009, pet. denied) (citing *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 167 (Tex. App.—Austin 1996, no pet.) (finding loan servicing to be an ancillary service not contemplated by the DTPA); *Porter v. Countrywide Home Loans, Inc.*, No. V-7075, 2008 WL 2944670, *3 (S.D. Tex. July 24, 2008) ("A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction."). Because any alleged DTPA claim by Plaintiffs arises out of their mortgage loan, Defendants' servicing of the loan, or Plaintiffs' contention regarding discussions of an alleged unfinalized loan modification, they do not qualify as consumers for purposes of the DTPA. Further, the claim does not involve the purchase or lease of goods or services. Plaintiffs' DTPA claim therefore fails as a matter of law.

**Memorandum Opinion and Order - Page 5**

Plaintiffs' conversion claim, as pleaded, also fails as a matter of law. Under Texas law, conversion is the "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Bandy v. First State Bank, Overton*, *Tex*., 835 S.W.2d 609, 622 (Tex. 1992). Although phrased in terms of conversion, Plaintiffs essentially allege that Defendants breached the deed of trust by failing to turnover the remaining $180,000 in insurance proceeds to reimburse them for repairs made to the property at issue. Plaintiffs' contract and conversion claims are therefore based on the same factual scenario. Consequently, Plaintiffs' conversion claim, as pleaded, is barred by the economic loss doctrine. *See, e.g., Dhanani v. Giles*, 10-07-00144-CV, 2008 WL 2210004, at *4-5 (Tex. App.—Waco May 28, 2008, pet. denied) (concluding that conversion claim was barred because breach of contract and conversion claim were "based on the same factual scenario" and the exercise of dominion over the plaintiff's property was tantamount to a breach of contract).

The court also agrees with Defendants' contention that Plaintiffs' claims against the individual Defendants should be dismissed because:

> Plaintiffs allege no fact to suggest that a claim is being asserted directly against the individual defendants. First, Plaintiffs purport to assert a claim against "Defendants" for breach of the note, but Plaintiffs do not allege that any individual defendant is a party to the note (nor could they). (Petition, Doc. 1-6 at p. 11). Second, Plaintiffs' conversion claim alleges that "Defendants" wrongfully possess funds, *id.*, but the factual allegations make clear that the individual defendants are not holding any funds. (Petition, Doc. 1-6 at p. 7) ("Aurora was holding over $180,000 of the Company's insurance proceeds . . . ."). Third, Plaintiffs allege a fraud claim against "Defendants," (Petition, Doc. 1-6 at p. 12), but they do not point to any representation made by any individual defendant. Fourth, Plaintiffs complain of four separate alleged violations of the Texas Deceptive Trade Practices Act, (Petition, Doc. 1-6 at pp. 12-13), but they fail to identify (1) any representation any individual defendant made, (2) goods or services an individual defendant attempted to sell them, or (3) any duty the individual defendants had to disclose information.

> Additionally, Plaintiffs' petition makes clear that the individual defendants are joined only to enjoin a foreclosure. The only relief sought specifically against the Substitute Trustees – as opposed to "Defendants" – is an injunction preventing a December foreclosure. (Petition, Doc. 1-6 at pp. 14-15).

Defs.' Br. in Supp. of Mot. to Dismiss 5-6. Although Plaintiffs appear to have included the individual Defendants as parties for the purposes of the injunctive relief sought, any such requested relief is moot if Plaintiffs do not have a substantial likelihood of succeeding on the merits of their claims.

For all of these reasons and the reasons set forth in the court's prior Memorandum Opinion and Order (Doc. 10), the court, after reviewing Plaintiffs' supplemental brief and appendix, concludes that reversal of its Memorandum Opinion and Order (Doc. 10) is not warranted because Plaintiffs have not satisfied any of the requirements for a preliminary injunction. Accordingly, the court **grants** Plaintiffs' Alternative Motion for Leave to Amend to Consider Plaintiffs' Brief in Support of Their Motion for Preliminary Injunction and Appendix Therewith but **denies** Plaintiffs' Emergency Motion for Reconsideration of Order Denying Plaintiffs' Application for Preliminary Injunction (Doc. 11).

**It is so ordered** this 7th day of January, 2014.

Sam A. Lindsay
United States District Judge